UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

RICHARD W. COMERFORD             Civil Action No. 05-CV-11365-RGS
    PLAINTIFF
V.

HON. WILLIAM G. YOUNG
    DEFENDANT

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS PLAINTIFF'S MOTION FOR RECONSIDERATION BASED ON NEW EVIDENCE, CASE LAW AND JUSTICE**

BACKGROUND

This honorable Court in its order wrote in part that it is sympathetic "to the plaintiff's administrative challenges regarding his military compensation". Plaintiff is sincerely grateful to the Court for its sympathy. However this is not a matter concerning plaintiff's military compensation. It is a matter concerning his inalienable rights.

The honorable Judge Young has refused for 8-years to allow plaintiff access to the justice system. As evidenced by the record Judge Young has acted outside of both his jurisdiction and his judicial role. He has unlawfully allowed the government in four related actions to purportedly settle plaintiff's complaints with attorneys who did not represent plaintiff. He has also allowed the government not to serve plaintiff. He has

## New Evidence

Essentially the government for the past 12-years has claimed that plaintiff was, purportedly, either a part time reservist on active duty for training or a civilian employee of the government. Despite pay records, service records and the findings of it own IG the government simply refused to acknowledge that plaintiff has served on and had not been discharged from AGR duty. It has also claimed, after it fraudulently removed this case from State Court, that the federal Court, purportedly, did not have jurisdiction in this matter. It further claimed that purportedly the only body which had jurisdiction and could grant plaintiff "relief" was the Army Board for Correction of Military Records ("ABCMR").

However the ABCMR has recently written to plaintiff and his Member of Congress. It now claims that it does not have jurisdiction over the National Guard and that it cannot grant "relief" to plaintiff. (Note: Plaintiff was incapacitated in the line of duty while serving on AGR duty in the National Guard.) The ABCMR now also claims, contrary to its previous finding made in 2001, that plaintiff was discharged from AGR duty in 1994; but it refuses to release to plaintiff a copy of his purported DD Form 214 which purportedly separated plaintiff from AGR duty. (Note: Pursuant to statue (10 USC 1168) and regulation (32 CFR 45) a soldier cannot be released from AGR duty until his DD Form 214 is "physically delivered" to him on the effective date of separation from said duty.)

Contradicting the new claims of the ABCMR are both the National Guard Bureau ("NGB") and the U.S. Army Reserve which, in response to inquires from plaintiff's Member of Congress, contacted plaintiff and told him that he has not been discharged from AGR Duty and that plaintiff remains on AGR duty until he is issued a DD Form 214 separating him from said duty.

Judge Young sent plaintiff's case to the ABCMR in 1999 and 2000 and 2002. Plaintiff pursuant to a lawful FOIA request has received a copy of the ABCMR case file on this matter. The ABCMR's own file shows that in violation of the purported 1999 arbitration and 2002 settlement agreements the ABCMR did not accept applications for the correction of plaintiff's record.

The file also shows that the ABCMR was aware of the 1997 proceedings of the Medical Duty Review Board which found plaintiff "not medically fit for continued service" and referred plaintiff for a medical retirement. However the ABCMR in violation of 10 USC 1552 did not mention cite and consider said medical board and its findings in the 2001 decision. Meanwhile the government has fraudulently claimed that plaintiff was medically returned to duty and insists that plaintiff undergo another medical exam in order to provide plaintiff with "relief".

However the file shows that the purported "relief" is the purported opportunity to remain on part time duty in the Army Reserve and to purportedly qualify for a Reserve

Retirement at age 60. This is fraudulent "relief" because plaintiff has already qualified for and received a letter from the government acknowledging said qualification for a Reserve Retirement at age 60.

The government has refused to relapse to plaintiff the proceedings of the above cited medical board for the medical exam. Plaintiff has refused to undergo said medical exam without his medical record. Judge Young has locked plaintiff into this legal limbo by refusing to order the government to surrender the medical boards proceedings to plaintiff. This is a clear violation of both due process and Army Regulations 40-3. 40-501 and 135-381. Plaintiff has refused to undergo any exam without the boards proceedings.

Now the ABCMR claims the medical exam, the source of this 4-year controversy, is no longer required for plaintiff to obtain the purported "relief".

## DISCUSSION

This honorable Court asserts that the honorable Judge Young has "absolute immunity" and cites Mireles v. Waco.

### Mireles v. Waco

This honorable Court in its order cited Mireles v. Waco in part: "Although unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the

authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."

However the Court in Mireles v. Waco also wrote in part:

"A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages."

The Court in Mireles v. Waco also wrote:

"Rather, our cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. .. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." The Court in Mireles v. Waco also wrote

"whether an act by a judge is a "judicial" one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity

The Court in Mireles v. Waco also wrote:

"the relevant inquiry is the "nature" and "function" of the act, not the "act itself... In other words, we look to the particular act's relation to a general function normally performed by a judge"

The Court in Mireles v. Waco also wrote:

"the nature of the function performed, not the identity of the actor who performed it, that inform[s] our immunity analysis."

Plaintiff cannot find anything in the Supreme Court's ruling in Mireles v. Waco that supports the idea of absolute immunity for a federal Judge.

### Is There Absolute Judicial Immunity For A Federal Judge?

Plaintiff is unlearned in the law. However a casual internet search provided a large number of case in which the Courts, to include the Supreme Court, have found that there is no such thing in American jurisprudence as absolute immunity for a federal Judge. For the Court's convenience plaintiff has copied the citations and arguments he found on the internet below:

* When a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes expressly depriving him of jurisdiction, judicial immunity is lost. *Rankin v. Howard*, (1980) 633 F.2d 844, cert den. *Zeller v. Rankin*, 101 S.Ct. 2020, 451 U.S. 939, 68 L.Ed 2d 326.

* In *Rankin v. Howard*, 633 F.2d 844 (1980) the Ninth Circuit Court of Appeals reversed an Arizona District Court dismissal based upon absolute judicial immunity, finding that

7

both necessary immunity prongs were absent; later, in *Ashelman v. Pope*, 793 F.2d 1072 (1986), the Ninth Circuit, *en banc*, criticized the "judicial nature" analysis it had published in *Rankin* as unnecessarily restrictive. But *Rankin's* ultimate result was not changed, because Judge Howard had been independently divested of absolute judicial immunity by his complete lack of jurisdiction.

* Some Defendants urge that any act "of a judicial nature" entitles the Judge to absolute judicial immunity. But in a jurisdictional vacuum, (that is, absence of all jurisdiction) the second prong necessary to absolute judicial immunity is missing. *Stump v. Sparkman*, id., 435 U.S. 349.

* Where there is no jurisdiction, there can be no discretion, for discretion is incident to jurisdiction." *Piper v. Pearson*, 2 Gray 120, cited in *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1872)

* A judge must be acting within his jurisdiction as to subject matter and person, to be entitled to immunity from civil action for his acts. *Davis v. Burris*, 51 Ariz. 220, 75 P.2d 689 (1938)

* Generally, judges are immune from suit for judicial acts within or in excess of their jurisdiction even if those acts have been done maliciously or corruptly; the only exception being for acts done in the clear absence of all jurisdiction. *Gregory v. Thompson*, 500 F2d 59 (C.A. Ariz. 1974)

* There is a general rule that a ministerial officer who acts wrongfully, although in good faith, is nevertheless liable in a civil action and cannot claim the immunity of the sovereign. *Cooper v. O'Conner*, 99 F.2d 133

* When a judicial officer acts entirely without jurisdiction or without compliance with jurisdiction requisites he may be held civilly liable for abuse of process even though his act involved a decision made in good faith, that he had jurisdiction. *State use of Little v. U.S. Fidelity & Guaranty Co.*, 217 Miss. 576, 64 So. 2d 697.

* "... the particular phraseology of the constitution of the United States confirms and strengthens the principle, supposed to be essential to all written constitutions, that a law repugnant to the constitution is void, and that courts, as well as other departments, are bound by that instrument." *Marbury v. Madison*, 1 Cranch 137 (1803).

* "No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; and an attempt to enforce it betond these boundaries is nothing less than lawless violence." *Ableman v. Booth*, 21 Howard 506 (1859).

* "The courts are not bound by an officer's interpretation of the law under which he presumes to act." *Hoffsomer v. Hayes*, 92 Okla 32, 227 F 417.

* "The doctrine of judicial immunity originated in early seventeenth-century England in the jurisprudence of Sir Edward Coke. In two decisions, *Floyd & Barker* and the *Case of the Marshalsea*, Lord Coke laid the foundation for the doctrine of judicial immunity." *Floyd & Barker*, 77 Eng. Rep. 1305 (1607; *The Case of the Marshalsea*, 77 Eng. Rep. 1027 (1612) were both cases right out of the Star Chamber.

Coke's reasoning for judicial immunity was presented in four public policy grounds:
1. Finality of judgment;
2. Maintenance of judicial independence;
3. Freedom from continual calumniations; and,
4. Respect and confidence in the judiciary.

The Marshalsea presents a case where Coke denied a judge immunity for presiding over a case in assumpsit. Assumpsit is a common-law action for recovery of damages for breach of contract. Coke then explained the operation of jurisdiction requirement for immunity:

. "[W]hen a Court has (a) jurisdiction of the cause, and proceeds iverso ordine or erroneously, there the party who sues, or the officer or minister of the Court who executes the precept or process of the Court, no action lies against them. But (b) when the Court has not jurisdiction of the cause, there the whole proceeding is [before a person who is not a judge], and actions will lie against them without any regard of the precept or process..."

Although narrowing the availability of judicial immunity, especially in courts of limited jurisdiction, Coke suggested that there was a presumption of jurisdiction and that the judge must have been aware that jurisdiction was lacking.

Thus, questions of personam, rem and res jurisdiction are always a proper issue before the court to obviate the defense that the court had no way to know they lacked jurisdiction.

CASE NOTE: "Federal tort law: judges cannot invoke judicial immunity for acts that violate litigants civil rights; Robert Craig Waters. Tort & Insurance Law Journal, Spr. 1986 21 n3, p509-516"

* A Judge is not immune for tortious acts committed in a purely Administrative, non-judicial capacity. *Forrester v. White*, 484 U.S. at 227-229, 108 S.Ct. at 544-545; *Stump v. Sparkman*, 435 U.S. at 380, 98 S.Ct. at 1106. *Mireles v. Waco*, 112 S.Ct. 286 at 288 (1991).

* In the following cases, courts have found that the judges acted outside of their judicial capacity and were not entitled to immunity: Forrester v. White, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)(state court judge did not have absolute immunity from damages suit under S 1983 for his decision to demote and dismiss a probation officer); Morrison v. Lipscomb, 877 F.2d 463 (6th Cir.1989)(state court judge was not entitled to judicial immunity in connection with order declaring moratorium on issuance of writs of

9

restitution from December 15 through January 2, as judge was acting in administrative and not judicial capacity); King v. Love, 766 F.2d 962, 968 (6th Cir.), cert. denied, 474 U.S. 971, 106 S.Ct. 351, 88 L.Ed.2d 320 (1985)(although setting bond on an arrest warrant is a judicial act, the act of deliberately misleading the police officer who was to execute the warrant about the identity of the person sought was nonjudicial); Sevier v. Turner, 742 F.2d 262 (6th Cir.1984)(juvenile court judge's initiation of criminal prosecution and civil contempt proceeding against father for child support in arrears constituted nonjudicial acts); New Alaska Development Corporation v. Guetschow, 869 F.2d 1298 (9th Cir.1988)(receiver appointed by state court to manage business assets of an estate was entitled to absolute derivative judicial immunity, but receiver was not absolutely immune from allegations that he stole assets or slandered parties, as such alleged acts were not judicial); Harper v. Merckle, 638 F.2d 848 (5th Cir.), cert. denied, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981)(holding a contempt proceeding and ordering plaintiff incarcerated were not judicial acts where controversy that led to incarceration did not center around any matter pending before the judge, but around domestic problems of plaintiff former wife who worked at the courthouse); Harris v. Harvey, 605 F.2d 330 (7th Cir.1979), cert. denied, 445 U.S. 938, 100 S.Ct. 1331, 63 L.Ed.2d 772 (1980)(allegedly repeated communications to the press and city officials which were critical of police lieutenant, and the improper instigation of criminal proceedings against the lieutenant by judge as part of a racial campaign to discredit lieutenant were not judicial acts).

The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, i.e., whether it is a function *normally performed by a judge*, and the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." 435 U.S. 349, 362 (emphasis added)

### * "ABSOLUTE JUDICIAL IMMUNITY" DOES NOT EXIST IN AMERICAN LAW

In Pulliam v Allen, 456 U.S. 522 (1984), the court held that judicial immunity does not bar an award of attorney fees against a judge when a plaintiff wins a suit against that judge for injunctive or declaratory relief. In Pulliam, the Supreme Court ruled that a magistrate was liable for over $80,000.00 in legal fees and costs because her conduct caused private injury to Plaintiff Allen. The Court held in this fashion even though her actions were indisputably judicial acts within her subject matter jurisdiction. In this case, Magistrate Pulliam set bail for several defendants who were accused of non-jailable offenses. Pulliam, 466 U.S. at 525. When some of the accused individuals were unable to make bail, she ordered them incarcerated. Richmond Allen, one of the bail defendants, sued Magistrate Pulliam for violating his civil rights. Allen did not seek monetary damages; rather he sought injunctive relief to prevent Pulliam from continuing this kind of practice. The first court Allen approached found Pulliam's actions unconstitutional and enjoined her from engaging in such conduct in the future. Allen v Burt, 690 F2d 376, 377 (4th Cir. 1982). Interestingly, this District Court awarded Allen attorney's fees of $7,000.00 under USC §1988. Judge Pulliam appealed the award claiming judicial

10

immunity and the Supreme Court affirmed despite finding that Pulliam had acted in her judicial capacity and within her subject matter jurisdiction. The court held that the doctrine of judicial immunity does not preclude injunctive relief as opposed to money damages against a judicial officer acting in a judicial capacity and, judicial immunity does not preclude a statutory award of attorney's fees generated in obtaining that injunctive relief. After this "death blow" for absolute judicial immunity, numerous efforts have been attempted in the Federal Congress pushed primarily by the American Bar Association to re-institute absolute judicial immunity. All have failed.

Following on Pulliam in 1984, the Court took up Forrester v White, 44 U.S. 219, 108 S.Ct. 538 (1988). In White a former probation officer filed an action against a state court judge alleging that she was demoted and discharged on account of her sex in violation of the Equal Protection clause of the Fourteenth Amendment. After a jury found in favor of the former probation officer, the District Court for the Southern District of Illinois entered summary judgment for the judge on the grounds of "absolute" judicial immunity. The Court of Appeals for the Seventh Circuit applied the two prong Stump test and logically concluded that the firing of the probation officer was a judicial act within the judge's jurisdiction. 792 F2d 647 (7th Cir. 1986). Following a Writ of Certiorari, the United States Supreme Court unanimously reversed. Writing for the court, Justice O'Connor offered that the court "has generally been quite sparing in its recognition of claims to absolute official immunity" 44 U.S. at 224. Holding that the actions of Judge White in firing Ms. Forrester were not entitled to judicial immunity, the court refused to apply even quasi-judicial immunity. See also, Guercio v Brody, 814 F2d 1115 (1987). Reversing the District and 7th Circuit Court of Appeals, Forrester like Pulliam make it quite clear that absolute judicial immunity is dead in American jurisprudence.
In the Mireles v Waco, ___ U.S.___,112 S. Ct. 286 (1991) opinion, the Court issued a per curiam opinion and disavowed the functional approach articulated in Forrester and returned to the Stump v Sparkman two-pronged judicial act test. As the law stands, there is no "absolute judicial immunity" and our Supreme Court requires the two-prong tests:

1. Does the court have subject matter jurisdiction;
2. Is the act a judicial act.

Then and only then, according to Mireles (1991) does judicial immunity apply.

It was this very test and the extra-judicial acts of Judge G. Michael Hocking, of Michigan's 56th Circuit Court that led the Federal Court for the western district of Michigan to enter a directed verdict against the judge. In McPherson v Kelsey, et al. U.S. District Court case number 5:93-cv-166, Judge Hocking ordered an attorney jailed for contempt when she argued against his unlawful conduct in a custody and visitation matter. The attorney was literally dragged from the courtroom where deputies beat her. She sustained brain damage from the assault. Her client, the father involved in the visitation dispute protested the action. At one point the Judge ran from the Courtroom, instructed his deputies to seize the father, search him at gunpoint and expel him from the courthouse. The father and attorney filed separate 42 USC § 1983 actions. On June 23rd, 1995 Judge Richard A. Enslen of the U S District Court for the Western District of

Michigan entered a directed verdict against Judge Hocking on First, Fourth and Fourteenth Amendment claims and four days later, the jury found against Judge Hocking on these claims and awarded the father money damages.

But the Court has, more often than not, been extremely circumscribed in granting judicial immunity. Indeed, Chief Justice Marshall in the famous Marbury v Madison, 1 Cranch 137 (1803) made it quite clear:

"The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws when he receives an injury." 1 Cranch 137 at 163 (1803).

Indeed, not even the Sergeant-at-Arms of the United States Congress' House of Representatives has been granted immunity. In Kilbourn v Thompson, 103 US 168 (1881):

"the Sergeant-at-Arms of the House of Representatives arrested the plaintiff under a warrant issued by the House. Plaintiff refused to testify in a congressional investigation and the House issued a contempt citation against him. The court held that the House did not have jurisdiction to conduct the particular investigation. The Sergeant at Arms, therefore, was liable for false arrest and could not assert the issuance of the warrant as a defense. "

## § 1983. Civil action for deprivation of rights

*Release date: 2005-02-25*

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## CONCLUSION

"From the very beginning, our state and national constitutions and laws have laid great

emphasis on procedural and substantive safeguards designed to assure fair trials before

impartial tribunals in which every defendant stands equal before the law. **Justice Hugo L. Black**

"There can be no equal justice where the kind of appeal a man enjoys depends on the amount of money he has." **Justice William O. Douglas**

A Level Playing Field?

In plain English the honorable Judge Young has not acted like a Judge in this case. Our system of Justice is supposed to provide a level playing field for rich and poor alike. Some allege that the level playing field is sometimes tilted in favor of the rich and powerful. The honorable Judge Young has not been content to just tilt the playing field in favor of the government. He has gone so far as to block plaintiff from entering the field.

This honorable Court should reconsider its order and allow the complaint to proceed.

Respectfully submitted,

Richard W. Comerford Pro Se
9 Speedwell Lane
Plymouth, Massachusetts 02360
(508) 833-9396

Dated 6 August 2005

13